JOHN D. GRAY AND ELIZABETH N. GRAY, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2376–68—2381–68.     Filed February 1, 1979.

---

[1]Cases of the following petitioners are consolidated herewith: John R. Gray, First National Bank of Oregon, Guardian, docket No. 2377–68; Joan E. Gray, First National Bank of Oregon, Guardian, docket No. 2378–68; Janet L. Gray, First National Bank of Oregon, Guardian, docket No. 2379–68; Laurie J. Gray, First National Bank of Oregon, Guardian, docket No. 2380–68; Anne L. Gray, First National Bank of Oregon, Guardian, docket No. 2381–68.

■■■■■■■■■■■■■■

■■■■■■■■■■

*Michael Waris, Jr., Robert J. Cunningham,* and *Donald Baker,* for the petitioners.

*John D. Picco* and *Gary R. DeFrang,* for the respondent.

OPINION

STERRETT, *Judge:* These cases are before us on remand from the Ninth Circuit following that court's decision in *Gray v. Commissioner,* 561 F.2d 753 (9th Cir. 1977). A controversy has arisen between the parties with respect to the amount of undistributed foreign personal holding company income taxable to petitioners as a result of the transaction herein and the taxable year in which petitioners must take this amount into income. We made complete findings of fact when the cases were before us initially and the facts were summarized in relevant part by the Ninth Circuit. We need here, therefore, set forth only a brief review thereof.

In 1962 petitioners owned 90.4 percent of Omark, a domestic corporation, which in turn owned 100 percent of the common stock of Omark 1960, a Canadian corporation. Yarg, also a Canadian corporation, owned 15,000 shares of Omark 1960's preferred stock and was in turn owned entirely by petitioners. All petitioners used the calendar year as their tax accounting period. Both Yarg and Omark 1960 used a fiscal year ending June 30 as their taxable year.

The Ninth Circuit found that on September 25, 1962, Omark 1960 redeemed all 15,000 shares of its preferred stock held by Yarg for $1.5 million (Canadian) in cash. That court also found that, immediately following the redemption, petitioners sold their Yarg stock to Frank H. Cameron, a Canadian businessman (Cameron). All petitioners held stock in Yarg through September 25, 1962. Thus, the last day in which a United States group existed with respect to Yarg was September 25, 1962. Secs. 552(a)(2), 554, and 544, I.R.C. 1954; sec 1.544–3, Income Tax Regs. Lastly, the Ninth Circuit found that in 1962 Yarg was a foreign personal holding company within the meaning of section 552, and that the redemption of Omark 1960's preferred stock resulted in a dividend distribution to Yarg. Dividends are

includable in foreign personal holding company income. Secs. 553 and 543(a)(1).

That part of a foreign personal holding company's income which remains undistributed at the end of the corporation's taxable year is taxable to its United States shareholders as provided in section 551(b). Section 551(b) sets forth the rules for determining both the amount and timing of the taxability of undistributed foreign personal holding company income. That subsection says:

(b) AMOUNT INCLUDED IN GROSS INCOME.—Each United States shareholder, who was a shareholder on the day in the taxable year of the company which was the last day on which a United States group (as defined in section 552(a)(2)) existed with respect to the company, shall include in his gross income, as a dividend, for the taxable year in which or with which the taxable year of the company ends, the amount he would have received as a dividend if on such last day there had been distributed by the company, and received by the shareholders, an amount which bears the same ratio to the undistributed foreign personal holding company income of the company for the taxable year as the portion of such taxable year up to and including such last day bears to the entire taxable year.

Clearly, since the redemption occurred on September 25, 1962, it occurred during Yarg's taxable year ended June 30, 1963. Petitioners are thus deemed to have received a dividend distribution, according to their ownership of Yarg, of a part of Yarg's undistributed foreign personal holding company income corresponding to an amount which bears the same ratio to the undistributed foreign personal holding company income of Yarg for its fiscal year ended June 30, 1963, as the portion of such taxable year up to and including September 25, 1962 (the last day a United States group existed with respect to Yarg), bears to Yarg's entire taxable year ended June 30, 1963.[2]

---

[2]With respect to the determination of the taxable year in which undistributed foreign personal holding company income is includable in the gross income of a United States shareholder, sec. 551(b) provides in pertinent part that:

Each United States shareholder, who was a shareholder on the day in the taxable year of the company which was the last day on which a United States group * * * existed with respect to the company, shall *include in his gross income,* as a dividend, *for the taxable year in which or with which the taxable year of the company ends* * * * . [Emphasis added.]

It is this particular rule of the foreign personal holding company provisions which is the focus of this remand.

With respect to the determination of the *amount* taxable (as distinguished from the time of taxability), sec. 551(b) provides that the portion of the undistributed foreign personal holding company income, computed as of the taxable year's end, which is includable in the United States shareholder's gross income is equal to—

Respondent argues that the Ninth Circuit has somehow indicated in its opinion that, section 551(b) to the contrary notwithstanding, petitioners should be deemed to have received a distribution in their taxable years ended December 31, 1962, of all (not a pro rata share) of Yarg's undistributed foreign personal holding company income as of September 25, 1962, including the dividend income realized by Yarg when Omark 1960 redeemed all its preferred stock held by Yarg. We can find no indication from the Ninth Circuit's opinion herein that it intended to tax to petitioners the undistributed foreign personal holding company income generated by the redemption from Yarg of the Omark 1960 preferred stock under any method other than that set forth by the statute. We do not believe that respondent's position is supported by the Ninth Circuit's opinion herein. In fact, respondent's position is contrary to the clear language of the longstanding regulations in this area. See sec. 1.551–2(b), (c), and (d), Income Tax Regs. (1962).

Alternatively, respondent argues that we should find that Yarg "evaporated" or that Yarg's existence was somehow "terminated" when its stock was acquired by Cameron, or that its fiscal year ended at that time. Since corporations do not simply "evaporate," we assume that respondent's theory involves some sort of constructive liquidation of Yarg immediately after the sale by petitioners of their stock. Our liquidation theory in the original opinion herein had the liquidation preceding the redemption. Respondent's liquidation theory has it following the redemption and sale. This is a new theory developed by respondent after remand of the case to us. We are not free on remand to adopt a theory not even hinted at by the Ninth Circuit—especially a liquidation theory so close to the one rejected on appeal. We can see no basis in the facts for finding

---

the amount [which the United States shareholder] would have received as a dividend if [hypothetically] on such last day there had been distributed by the company, and received by the shareholders, an amount which bears the same ratio to the undistributed foreign personal holding company income of the company for the taxable year as the portion of such taxable year up to and including such last day bears to the entire taxable year.

Thus, a member of a United States group must include in his gross income during the appropriate taxable year, as determined under the first discussed rule of sec. 551(b), an amount computed on the basis of (1) his percentage of the total ownership of the foreign personal holding company, and (2) the number of days of ownership by a United States group (if the taxpayer is a member of such group on the last day of its existence in a taxable year), over the total number of days in the foreign personal holding company's taxable year.

that Yarg was liquidated after its sale or that its fiscal year was terminated by the sale. To the contrary, what facts we do have indicate just the opposite.[3] The Ninth Circuit explicitly stated that we were not free, under the instant circumstances, to reject Yarg's corporate separateness.

The Ninth Circuit held that the redemption proceeds remained undistributed for purposes of the Code. The redemption proceeds could not be "undistributed" if there was a liquidation of Yarg. Secs. 556(a), and 562(b). We believe the specific holding of the Ninth Circuit militates against respondent's new theory. Respondent argues, however, citing note 15 of page 760 of the Circuit Court's opinion, that, since the Ninth Circuit found that the amount of Yarg's redemption proceeds was "undistributed" for purposes of the foreign personal holding company provisions of the Code upon the sale of petitioners' stock, the Circuit Court had implicitly found that this undistributed amount was taxable to petitioners in 1962. *Gray v. Commissioner, supra* at 760 n. 15. This is so, argues respondent, because foreign personal holding company income cannot be "undistributed" until the end of the corporation's taxable year. Respondent cites no authority for this proposition. We believe that he has strained note 15 beyond its meaning. As of the sale of petitioners' Yarg stock, Yarg's foreign personal holding income as of sale date remained undistributed. The *amount* of this undistributed foreign personal holding company income includable in petitioners' income was still determinable under section 551(b). The Ninth Circuit never says or implies anything different. Note 15 is directed at explaining the effects if Yarg had been liquidated—a finding specifically rejected by the court.

Thus we hold that petitioners are taxable in their taxable year ended December 31, 1963, on their pro rata share of so much of Yarg's undistributed foreign personal holding company income for its fiscal year ended June 30, 1963, as bears the same ratio to the undistributed foreign personal holding company income of Yarg for that entire fiscal year as the portion of such taxable

---

[3]The Ninth Circuit found that *shares of stock* in Yarg were sold by petitioners to Cameron; that the redemption of the preferred stock was made *from Yarg* rather than from the petitioners directly; that such redemption resulted in the receipt of a dividend *by Yarg* rather than by the petitioners as individuals; that such dividend generated foreign personal holding company income; and that the petitioners became taxable under the provisions of the foreign personal holding company sections of the Internal Revenue Code rather than under the dividend or other sections thereof.

year up to and including the date of sale to Cameron, September 25, 1962, bears to Yarg's entire taxable year.

*Decisions will be entered under Rule 155.*